## Nelson Hodges *v.* The State.

1. Assault with Intent to Murder. — Malice is an essential element in the offense of an assault with intent to murder.

2. Same — Charge of the Court. — In every trial for an assault with intent to murder, the charge of the court, in order to present the "law applicable to the case," must define or explain to the jury the term "malice," as used in the statutory definition of murder.

3. Same. — Trying an indictment for an assault with intent to murder, the court below, in its charge to the jury, not only failed to define or explain the term "malice," but, after charging the law of manslaughter, omitted to instruct the jury that, in case they believed from the evidence that if death had ensued the offense would have been manslaughter, they could only convict of an aggravated assault.    *Held,* that in this case the omission was error calculated to prejudice the rights of the accused.

Appeal from the District Court of Gonzales.    Tried below before the Hon. E. Lewis.

J. M. King, who inferentially appears to have been an officer of the law, testified for the state that, on the night of January 26, 1877, he was out summoning witnesses in a certain case, and was riding along a public road in company with J. H. Ellis, when they heard the report of a pistol behind them and some one halloo.    Stopping a little while, they waited until Nelson Hodges and three other negroes rode up to where they were.    Hodges was riding in the rear of his party.    As soon as the two foremost of the men got opposite to witness and Ellis, witness, holding his pistol down by his side, told them who he was, and that he was

an officer and wanted the pistol which they had. The two foremost said they did not have any pistol, and witness passed on to the two in the rear, and then noticed the accused put his hand behind him as if to draw a pistol. Thereupon, witness seized the bridle of Hodges' horse and told him not to draw a weapon. Hodges made no reply, but tried to pull away from witness, still keeping his hand behind him. Witness insisted on getting Hodges' pistol, and said to him: "You resisted me once before, but do not do it again." As quick as lightning he drew his pistol and fired at witness, who felt the barrel touch his face, the bullet passing through his coat-collar. Hodges fired two more shots at witness with great rapidity, the bullets passing down through witness' clothes. About the time he fired his last shot, a gun fired behind him and he fell backwards from his horse. Witness fired at Hodges during the *melée*, but was positive that the latter fired first. Witness discharged his pistol but once, but all the chambers must have been exploded then, for he snapped it at Hodges after the latter fell, and subsequently examined it to see why it snapped, and found the cylinder empty. Hodges got up and went off. Four or five months before this affair, witness had attempted to take a pistol from Hodges.

J. H. Ellis, for the state, testified to all the facts detailed by King in regard to the shooting, saying that King and Hodges fired about the same moment, but, from the flashes of their pistols, he could see that Hodges fired before King. This witness said that King may have fired more than once.

The court below instructed the jury to the effect that, if King, as an officer, attempted to arrest the defendant and take his pistol, he was only discharging his duty under the act "to regulate the keeping and bearing of deadly weapons."

The jury convicted the accused of assault with intent to

murder, and assessed his punishment at seven years in the penitentiary.

*Ponton & Fly*, for the appellant.

*W. B. Dunham*, for the State.

White, J. As was said by this court in the case of *Lockwood* v. *The State*, 1 Texas Ct. App. 749, " our statute provides that, ' whenever it appears, upon a trial for an assault with intent to murder, that the offense would have been murder had death resulted therefrom, the person committing the assault is deemed to have done the same with that intent ' (Pasc. Dig., art. 2159); and our Supreme Court has said that, in assault with intent to murder, the true criterion is : Had death ensued, would the result have been murder? *Yanez* v. *The State*, 20 Texas, 660. Again, it should be remembered that every killing is not murder, nor is every unlawful killing murder. Murder, as an offense, is distinctly defined and has a distinctive meaning attached to it by our law, and no killing is murder unless it contains the elements and ingredients of that offense as defined by the law. If, then, the criterion by which to test the offense of an assault with intent to murder be that, had death resulted, it would or must have been murder, how is a jury to determine that question unless murder is defined, or, in connection with the facts of the case, they are so charged and instructed, in substance, as to the elements and ingredients of that crime, as that they can say that the crime would or would not have been murder had death resulted?" 1 Texas Ct. App. 749.

Now, malice is the essential ingredient and requisite element to murder of all kinds, and without this element and ingredient no homicide can be murder under our law. Nor could a party be convicted of an assault with intent to

murder unless he was incited, in the commission of the assault, by malice — malice being as much an element and ingredient of this offense as of the other. It follows, as has been repeatedly decided, that neither in a charge given by a court in a case of murder nor of assault with intent to murder can it be said that the charge presents "the law applicable to the case," which fails to define or instruct the jury as to the meaning of the term "malice." *Anderson* v. *The State*, 1 Texas Ct. App. 730; *Smith* v. *The State*, 1 Texas Ct. App. 517; *Williams* et al. v. *The State*, decided at the Tyler term, 1877, reported in the *Texas Law Journal*, No. 18, p. 138, *ante*, p. 316.

The charge of the court in the case we are considering nowhere defines or explains what the term "malice," as used in the definition of murder, means.

Again, the court charged the jury as to the law of manslaughter, but failed to explain to the jury that they could only find the defendant guilty of an aggravated assault in case they came to the conclusion from the evidence that, had death resulted from the assault, the offense would have been manslaughter and not murder. It is true that they were instructed that "murder is distinguishable from every other species of homicide by the absence of the circumstances which reduce the offense to negligent homicide or manslaughter;" but they are nowhere told what the verdict should be in case the killing would have been manslaughter. This was an error of omission which might well be calculated "to injure the rights of the accused."

It is unnecessary to discuss the other errors complained of, as they are not likely to occur upon a second trial. But, for the errors in the charge of the court, as above indicated, the judgment must be reversed and the cause remanded.

*Reversed and remanded.*